IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MONTA BROWN,

        Plaintiff,

v.                                      Civil Action No. 3:24cv228

LIEUTENANT T. GREEN, *et al.*,

        Defendants.

## MEMORANDUM OPINION

Monta Brown, a Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on Brown's Complaint (ECF No. 1), and the Motion for Summary Judgment filed by the remaining Defendants Sergeant J. Boone and Lt. T. Green ("Defendants") (ECF No. 47).[2] The Court provided Brown with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 49.) Brown filed a Response. (ECF No. 50.) By Memorandum Order entered on June 11, 2026, the Court directed

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Opinion and Order entered on November 15, 2024, the Court dismissed any claims against Defendants Smith, Daughtry, or Richie without prejudice because Brown failed to effect service on those Defendants in a timely manner. (ECF Nos. 22, 23.)

Defendants to file a further response. (ECF No. 51.)[3] Accordingly, Defendants' Motion for Extension of Time to Deem Response to Court's Order Timely Filed (ECF No. 52) will be GRANTED. The Response to Court's Order (ECF No. 53) is DEEMED timely filed.

For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

## I. Summary of Claims and Allegations

In his Complaint, Brown alleges that while incarcerated at Sussex I State Prison ("Sussex") officers arrived on an unidentified date to take him to segregation, Brown asked why he was being moved, and "[as he] was questioning Lt. Green he got irritated . . . and he retrieved his mace canister and used it on me without warning or cause." (ECF No. 1 ¶¶ 4–5.)[4] With respect to Defendant Boone, Brown alleges that "Sgt. Boone is a ranking officer" who "did not stop the incident" but instead, "continued to hold me down to be maced." (ECF No. 1 ¶¶ 13–14.) Brown raises the following claims for relief against Defendants:

Claim One:    "Lt. Green is liable because he violated my 8th Amendment[5] when he used excessive force by macing me without cause (I was not hostile or resistant)." (ECF No. 1 ¶ 19.)

---

[3] The Court directed a further response from Defendants in support of their arguments about why a particular Written Complaint was not properly submitted by Brown and why it did not comply with VDOC Operating Procedure. (ECF No. 51.)

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Brown's submissions.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
Brown also contends that Defendants are liable under the Fourteenth Amendment for the same reasons and because they did not follow or knew and disregarded "policy and procedure." (ECF No. 1 ¶¶ 27, 30.) Brown may not bring a Fourteenth Amendment due process claim here because the explicit text of the Eighth Amendment protects Brown from cruel and unusual punishment. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *see Lewis*, 523 U.S. at 842 ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion))).

Claim Two:  "Sgt. Boone is liable [under the Eighth Amendment] because"
(a) he knew that Brown should not have been maced "and did not intervene to stop them:" and,
(b) "because he held me down and allowed [the officers] to continue to mace me." (ECF No. 1 ¶¶ 22–23.)

Brown asks for monetary damages. (ECF No. 1, at 4.)

Defendants argue that Brown failed to exhaust his administrative remedies with respect to these claims.

## II.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

---

Further, to the extent that Brown argues that Defendants violated a Virginia Department of Corrections policy, that fails to state a cognizable claim for relief under § 1983. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).  In any event, as explained below, Brown failed to exhaust his administrative remedies with respect to any claim in his Complaint.

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants ask the Court to dismiss Brown's claims because he failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submitted: (1) the affidavit of Z. Dunson, the Ombudsperson for Sussex (ECF No. 48-1, at 1–6);[6] (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 48-1, at 8–24); (3) and,

---

[6] The Court refers to Z. Dunson's affidavit by paragraph numbers.

grievance materials that Brown filed related to his claims in this case (ECF No. 48-1, at 25–30). In response to the Memorandum Order entered on June 11, 2026, directing Defendants to file a further response, Defendants submitted an additional affidavit of Z. Dunson (ECF No. 53-1).

At this stage, the Court is tasked with assessing whether Brown "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Although Brown submitted a Response, he failed to respond to the Motion for Summary Judgment with any evidence. Brown also submitted an unsworn Complaint. Brown's failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").[7]

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Brown.

### III. Undisputed Facts Related to Exhaustion

### A. Grievance Procedure at the Virginia Department of Corrections ("VDOC")

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure § 866.1.II. Operating Procedure § 866.1 requires

---

[7] Brown previously submitted two Declarations in support of his Partial Motions for Summary Judgment that the Court denied on April 17, 2025. (ECF No. 35.) The Court has generously reviewed these Declarations (ECF No. 24-1; ECF No. 27-1), and find they have no bearing on whether Brown exhausted his administrative remedies prior to bringing his claims here.

that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See id.* at § 866.1.I.D.1–4. "The first step in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* at § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint. Id.* at § 866.1.I.D.2. "The *Written Complaint* must be received by designated staff within 15 days of the original incident or discovery of the incident." *Id.* at § 866.1.I.D.2.

Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* at § 866.1.II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the inmate, or staff fail to provide a written response within 15 days, the inmate may file a *Regular Grievance* .... The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4. The offender must attach any required documentation demonstrating that he attempted to resolve the issue through the Informal Complaint process; therefore, the offender must submit a copy of his *Written Complaint* or his Emergency Grievance Response with his *Regular Grievance. Id.* at § 866.1.III.B.6.

### 1. **Grievance Intake Procedure**

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* at § 866.1.III.C.3–4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* at § 866.1.III.C.5. In the Regular Grievance, an inmate is often "instructed how to remedy any

6

problems" and can submit a new grievance correcting those deficiencies. (ECF No. 48-1 ¶ 7.) "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." Operating Procedure § 866.1.III.C.6. "There is no further review of the intake decision" and "[a]ppealing the intake decision does not satisfy the exhaustion requirement." (ECF No. 48-1 ¶ 7.)

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." Operating Procedure § 866.1.III.C.4. Once the grievance is accepted for review, the Institutional Ombudsperson determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the inmate unless a continuance is authorized." *Id.* at § 866.1.III.F.2.b.

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of receipt of the *Offender Grievance Response. Id.* at § 866.1.IV.B.2. "The offender must submit their appeal within five days of receiving their response to the staff member designated on the *Offender Grievance Response-Level I.*" *Id.* at 866.1.IV.B.2. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* at § 866.1.IV.C.1.a–e. For most issues, the Level II appeal is the final level of review. (ECF No. 48-1 ¶ 8.)

7

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." *Id.* at § 866.1.V.B.

## B. Brown's Relevant Grievance Materials

All VDOC inmates are oriented in the Offender Grievance Procedure when they are received into the VDOC, and then again, each time they are transferred to a new facility. (ECF No. 48-1 ¶ 21.) Brown was housed in Sussex from August 15, 2019, to February 21, 2020, and then again from March 25, 2022, to May 15, 2024, and he had unimpeded access to Written Complaint and Regular Grievance forms. (ECF No. 48-1 ¶ 21.)

### 1. Grievance Materials from August 20, 2022 Unrelated to Excessive Force

Brown first filed grievance materials that did not raise any issue that Defendants used excessive force against him on August 20, 2022, which is the subject of his claims here. Instead, on August 22, 2022, Brown submitted a Written Complaint (SXI-22-INF-01426) complaining that on August 20, 2022, Defendant Green "stole [Brown's] personal property out of [his] cell" and "[n]o one witnessed the . . . personal property inventory items being listed." (ECF No. 48-1, at 25.) On August 31, 2022, the Written Complaint was received in the Grievance Department, and on September 8, 2022, Unit Manager Branch responded that Brown's items were in fact inventoried. (ECF No. 48-1, at 25.)

On September 15, 2022, Brown submitted a Regular Grievance complaining that on August 20, 2022, Defendant Brown stole his property and failed to inventory it and that Brown never refused to sign the inventory sheet. (ECF No. 48-1, at 26.) On September 19, 2022, Institutional Ombudsman T. Whitehurst rejected the Regular Grievance during the intake process because Brown failed to attach his "answered Written Complaint" showing that he had utilized

8

the informal complaint process first. (ECF No. 48-1, at 27.) Brown appealed the intake decision to Regional Ombudsman K. Crosby, who on October 18, 2022, refused to accept the appeal of the intake decision because it exceeded the five-day time limit. (ECF No. 48-1, at 27.)

## 2. Grievance Material Related to Claims One and Two (Excessive Force)

The record reflects that Brown submitted a Written Complaint and Regular Grievance simultaneously, on September 19, 2022, the last day on which Brown could file a Regular Grievance about the August 20, 2022 incident. (ECF No. 48-1, at 28–29.)

Brown wrote a Written Complaint dated August 31, 2022, complaining that on August 20, 2022, Defendant Green assaulted and maced him while he was being cuffed by Sgt. Boone, Sgt, Richie, and C/O Smith. (ECF No. 48-1, at 28.) Brown contended that at no point did he refuse to cuff-up and he believed it was excessive force. (ECF No. 48-1, at 28.) On September 19, 2022, the Written Complaint was stamped as received in Sussex's Grievance Department. (ECF No. 48-1, at 28.) The Written Complaint did not receive a staff response, because Brown submitted it simultaneously with a Regular Grievance complaining of the same incident. (ECF No. 53-1 ¶¶ 11, 15.) Because Brown submitted his Written Complaint simultaneously with the Regular Grievance, at the time the Regular Grievance was received, the Written Complaint had not yet been logged into the system, and staff had not been provided with the allotted fifteen days to respond. (ECF No. 53-1 ¶¶ 15, 18.) Accordingly, this Written Complaint was not processed because it did not comply with VDOC Operating Procedure that he attempt to resolve the issue informally first. (ECF No. 48-1 ¶ 15.)

As discussed above, an unsigned and undated Regular Grievance was also received in the Grievance Department on September 19, 2022. (ECF No. 48-1, at 29.) Brown stated that on August 20, 2022, Defendant Green "assaulted, maced, threaten[ed] and beat [him] after ordering

9

[him] to walk to the cell." (ECF No. 48-1, at 29.)  On September 19, 2022, Institutional Ombudsman T. Whitehurst rejected Brown's Regular Grievance during the intake process because Brown failed to "attach answered Written Complaint." (ECF No. 48-1, at 30.)  Brown could not have attached an *answered* Written Complaint because he submitted the Written Complaint simultaneously with the Regular Grievance, and he failed to complete the informal process first as required.  (ECF No. 53-1 ¶ 16.)  Brown did not appeal the intake decision and did not resubmit the Regular Grievance with the identified deficiency corrected.  (ECF No. 48-1 ¶ 18.)

Z. Dunson explains that rejected Regular Grievances do not satisfy the exhaustion requirement.  (ECF No. 48-1 ¶ 20.)  Instead, "[t]he exhaustion requirement will be met only when a regular grievance has been appealed through the highest eligible level without satisfactory resolution of the issue." (ECF No. 48-1 ¶ 20.)

### IV. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001).  Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The United States Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93.  The Supreme Court

10

explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Brown failed to file a Regular Grievance that was accepted and processed with respect to the August 20, 2022 allegations that Defendants used excessive force against him. Brown's Regular Grievance was rejected at intake because he failed to use the informal Written Complaint process in accordance with VDOC policy, and he never filed an appeal of that intake decision. Brown also never filed a Regular Grievance that corrected the deficiencies and was accepted into the grievance system, and he did not appeal through all levels of appeal. Accordingly, Brown failed to exhaust his administrative remedies with respect to Claims One or Two. Claims One and Two will be DISMISSED WITH PREJUDICE.[8]

---

[8] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g.*, *Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009). That is the case here because the thirty-day time limit for filing any relevant grievance has long since expired. Consequently, Claims One and Two will be dismissed with prejudice.

## V.  Conclusion

Defendants' Motion for Summary Judgment (ECF No. 47) will be GRANTED.  Brown's

claims and the action will be DISMISSED WITH PREJUDICE.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 8/6/2026
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

12